UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONTINENTAL CASUALTY COMPANY, <br><br> Plaintiff, <br><br> -v. <br><br> MARSHALL GRANGER & COMPANY, LLP, and LAURENCE M. BROWN, <br><br> Defendants, <br><br> and <br><br> JOSEPH J. BOUGHTON, JR. and NORTHSTAR INVESTMENT GROUP, LTD. <br><br> Defendants-Intervenors. | Case No. 7:11-cv-3979-CS |

## DEFENDANTS-INTERVENORS' MEMORANDUM OF LAW IN OPPOSITION TO CONTINENTAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

**BACKGROUND** ..................................................................................................3

    **A.**    **Procedural History**...............................................................................3

    **B.**    **Continental's Rescission Claim Is Based Solely On The Behavior Of Brown** .........................................................................................4

    **C.**    **The Policy Protects Innocent Insureds** ..............................................5

    **D.**    **Continental's "Evidence"** ..................................................................6

**ARGUMENT** .....................................................................................................7

**I.**    **CONTINENTAL'S MOTION MUST BE DENIED AS PREMATURE** ....................8

**II.**    **CONTINENTAL HAS NOT ESTABLISHED THE ABSENCE OF ANY GENUINE ISSUE OF MATERIAL FACT** ..........................................................................11

    **A.**    **New York Law Requires That An Insurer Submit Its Own Underwriting Guidelines And Documentation Of Underwriting Similar Risks** ...................11

    **B.**    **Continental Fails As A Matter Of Law To Demonstrate The Materiality Of Brown's Statements** ............................................................15

        **1.**    **The Aon Underwriting Authority Is Not A Guideline Governing Continental's Underwriting Process** ...............................15

        **2.**    **The Aon Underwriting Authority Creates Issues Of Fact** .................16

    **C.**    **The Boughton Entities Are Entitled To Discovery Regarding The Burrows Declaration** ...................................................................17

    **D.**    **Continental Has Not Proven That Brown Had Any Authority To Make Representations For Mangini** .............................................19

**III.**    **CONTINENTAL CANNOT RESCIND THE POLICY AS TO ALL INSUREDS BECAUSE THE POLICY PROTECTS INNOCENT INSUREDS** ..........................20

    **A.**    **The Policy Provides That Continental Cannot Rescind The Entire Policy For Concealment In The Application Process** ...............................20

    **B.**    **Continental Wrongly Contends That The Innocent Insureds Provision Applies Only To The "Exclusions" Section Of The Policy** ..............................21

**CONCLUSION** ..................................................................................................25

DOCSNY-496579v51

# **TABLE OF AUTHORITIES**

Page

Cases

*Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07-cv-7017, 2009 WL 928143
   (S.D.N.Y. Mar. 20, 2009) ...................................................................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................7, 8

*Andover Newton Theological School, Inc. v. Continental Cas. Co.*, 964 F.2d 1237
   (1st Cir. 1992) .....................................................................................................22

*Badillo v. Tower Ins. Co. of N.Y.*, 243 A.D.2d 413, 663 N.Y.S.2d 207
   (1st Dep't 1997) ..................................................................................................12

*Barkan v. New York Schools Ins. Reciprocal*, 65 A.D.3d 1061, 886 N.Y.S.2d 414
   (2d Dep't 2009) ...................................................................................................13

*Berger v. United States*, 87 F.3d 60 (2d Cir. 1996) ...................................................9

*Btesh v. Royal Ins. Co., Limited, of Liverpool*, 40 F.2d 659 (S.D.N.Y. 1930) .............21

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919
   (2d Cir. 1985).......................................................................................................18

*Carpinone v. Mutual of Omaha Ins. Co.*, 265 A.D.2d 752, 697 N.Y.S.2d 381
   (3d Dep't 1999)................................................................................................12, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................7

*Celotex Corp. v. Catrett*, 77 U.S. 317 (1986) .............................................................8

*Chicago Ins. Co. v. Kreitzer & Vogelman*, 210 F. Supp. 2d 407
   (S.D.N.Y. 2002) .........................................................................................13, 14, 16

*Chicago Ins. Co. v. Kreitzer & Vogelman,* No. 97 Civ. 8619, 2000 WL 16949
   (S.D.N.Y. Jan. 10, 2000)......................................................................................13

*Chicago Insurance Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335
   (S.D.N.Y. 2003) ...................................................................................................14

*Clifford Chance Limited Liability Partnership v. Indian Harbor
   Insurance Company*, 41 A.D.3d 214, 838 N.Y.S.2d 62 (1st Dep't 2007).............22

*Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208 (2002) .............24

*Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3 (N.D.N.Y. 2000) .......................9

DOCSNY-496579v51

*Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 762 N.Y.S.2d 148
(3d Dep't 2003)............................................................................................11, 12, 13

*Dalton v. Harleysville Worchester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009)............................25

*Farm Family Cas. Ins. v. Brady Farms, Inc.*, 87 A.D.3d 1324 (4th Dep't 2011) ........................24

*Feldman v. Friedman*, 241 A.D.2d 433, 661 N.Y.S.2d 9 (1st Dep't 1997)....................................13

*First Financial Ins. Co. v. Allstate Interior Demolition Corp.*
193 F.3d 109 (2d Cir.1999)..............................................................................12, 13, 14, 23

*Hare & Chase, Inc. v. National Surety Co.*, 60 F.2d 909 (2d Cir. 1932) .....................................20

*Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)....................8, 9

*Iacovangelo v. Allstate Life Ins. Co. of N.Y.*, 300 A.D.2d 1132, 750 N.Y.S.2d 920
(4th Dep't 2002)......................................................................................................14

*In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 2d 455
(S.D.N.Y. 2005) ................................................................................11, 12, 13, 14

*Legawiec v. North Am. Co. for Life & Health Ins. of N.Y.*, 38 A.D.3d 1184,
832 N.Y.S.2d 723 (4th Dep't 2007)......................................................................14

*Lenhard v. Genesee Patrons Ins. Co-op Ins. Co.*, 31 A.D.3d 831, 818 N.Y.S.2d 644
(3d Dep't 2006) ..................................................................................................13, 14

*Loo v. Prudential Ins. Co. of America*, 2004 WL 3017013
(S.D.N.Y. Dec. 30, 2004)................................................................................10, 17

*LoRusso v. Marco Tropical Properties, Inc.*, No. CIV-83-919E, 1986 WL 10738
(W.D.N.Y. Sep. 30, 1986) ......................................................................................18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........................7

*MBIA Inc. v. Federal Insurance Company*, 652 F.3d 152 (2d Cir. 2011) ...................................22

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003).........................................8, 9

*Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703 (2d Cir. 1996).........................19

*Moody Hill Farms Ltd. Partnership v. U.S. Dep't of Interior, Nat. Park Service*,
No. 95-cv-11001, 1996 WL 474209 (S.D.N.Y. Aug. 20, 1996)...............................................18

*Mycon v. Safeco Nat. Ins. Co.*, No. 45139-1, 2000 WL 628810
(Wash. Ct. App. May 15, 2000)..............................................................................22

DOCSNY-496579v51

*Novick v. Middlesex Mut. Assur. Co.*, 84 A.D.3d 1330, 924 N.Y.S.2d 296
(2d Dep't 2011)..................................................................................................13

*Ocean Walk, Ltd. v. Those Certain Underwriters at Lloyd's London*, No. 03-CV-5271,
2006 WL 2689626 (E.D.N.Y. Sep. 19, 2006)................................................12, 13

*Olympia Mortg. Corp. v. Certain Underwriters at Lloyd's*, No. 29830/08, 2009 WL
4481653 (N.Y. Sup. Ct. Oct. 29, 2009) .............................................................16

*Parmar v. Hermitage Ins. Co.,* 21 A.D.3d 538, 800 N.Y.S.2d 726
(2d Dep't 2005)............................................................................................12, 13

*Patrons Mut. Ins. Co. v. Rideout*, 411 A.2d 673 (Me. 1980)......................................20

*PMI Mortg. Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, No. 07-16337, 291
Fed.Appx. 40, 2008 WL 3838297 (9th Cir. Aug. 14, 2008)....................................22

*Private Export Funding Corp. v. Government of the Dominican Republic*, No. 88-cv-
5690, 1991 WL 60396 (S.D.N.Y. Apr. 8, 1991)..............................................17, 18

*Progressive Northern Ins. Co. v. Corder*, 15 S.W.3d 381 (Ky. 2000) .........................22

*Rhino Excavating Corp. v. Assurance Co. of America*, No. 4680/06, 2008 WL 2513334
(N.Y. Sup. Ct. Jun. 11, 2008)..........................................................................22

*Rolnick v. El Al Israel Airlines, Ltd.*, 551 F. Supp. 261 (E.D.N.Y. 1982)....................18

*Sauer v. Xerox Corp.*, 938 F. Supp. 155 (W.D.N.Y. 1996) .......................................10

*Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968) .........................................18

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
454 B.R. 285 (Bkrtcy. S.D.N.Y. 2011)...............................................................19

*Seneca Beverage Corp. v. Healthnow New York, Inc.*, No. 05-4594, 2006 WL 2787454
(2d Cir. Sep. 26, 2006)......................................................................................9

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) ......................................19

*Stonewall Ins. Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178
(2d Cir. 1995)................................................................................................21

*Subin v. Goldsmith*, 224 F.2d 753 (2d Cir. 1955)..................................................18

*Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995).............................................9, 10

*Upjohn Co. v. Aetna Cas. and Sur. Co.*, No. 4:88-cv-124, 1994 WL 1029337
(W.D. Mich. Jul. 22, 1994)...............................................................................22

iv

*Zilkha v. Mutual Life Ins. Co. of N.Y.,* 287 A.D.2d 713, 732 N.Y.S.2d 51
   (2d Dep't 2001)..................................................................................................................12

<u>Rules</u>

Fed. R. Civ. P. 26(d)(1).......................................................................................................10

Fed. R. Civ. P. 12(b)(6)....................................................................................................2, 7

Fed. R. Civ. P. Rule 16(b)...............................................................................................4, 10

Fed. R. Civ. P. Rule 26(a)...............................................................................................4, 10

Fed. R. Civ. P. Rule 26(f)................................................................................................4, 10

Fed. R. Civ. P. Rule 56(d)...........................................................................................8, 9, 25

DOCSNY-496579v51

Defendants-Intervenors Joseph J. Boughton, Jr. and Northstar Investment Group Ltd. (collectively, the "Boughton Entities") respectfully submit this Memorandum of Law in Opposition to the Motion for Summary Judgment of Continental Casualty Company ("Continental" or "Plaintiff") .

By Plaintiff's moving for summary judgment prior to the filing of an Answer by any defendant and prior to the commencement of discovery – and by basing its motion on facts uniquely within Continental's knowledge (its alleged "receipt" and "reliance" on a certain insurance application in accordance with its own "underwriting guidelines") – Continental has made a motion that it knows this Court cannot grant.  Indeed, Continental cannot cite a single decision where a Court granted a motion for summary judgment made against a defendant before that defendant had filed an answer and before discovery was otherwise permissible.  As the courts uniformly observe, considerations of judicial economy alone dictate that a plaintiff should refrain from making a motion for summary judgment until after the defendant has answered, issue has been joined, and discovery has, at the very least, commenced.  To make Continental's motion even more remarkable in the annals of federal jurisprudence, Continental knowingly made its motion in the face of an adverse motion which, if granted, would moot Continental's motion.  If the Court grants the Boughton Entities' motion to dismiss the complaint for failure to state a claim for relief, the complaint upon which Continental has moved would cease to exist. It is *a fortiori* that relief prayed for in a complaint cannot be granted summarily if that same complaint fails to even state a claim for such relief.

Continental's position that the Federal Rules do not expressly prohibit a pre-discovery summary judgment motion, even if the motion is hypothetical and is premised on facts uniquely in its own possession, is besides the point.  The question is why Continental would have

gone to the extreme of choosing to make a hypothetical summary judgment motion, prior to the commencement of discovery, that would depend, if the motion were to be considered at all, on facts uniquely in its own possession.  Continental is a sophisticated litigant, so it must be presumed to know that no court ever has granted such a motion and, further, that it has chosen a course that thumbs its nose at the need to preserve judicial resources and to refrain from multiplying proceedings. The only plausible motive for Continental's filing of such a motion is that it seeks to achieve a collateral advantage relative to the Boughton Entities' pending Rule 12(b)(6) motion.  Presumably, Continental believes that if it presents facts extrinsic to the pleadings in support of its own motion, the Court will (erroneously) consider them in determining the Boughton Entities' dismissal motion.  Given Continental's procedural maneuver, we would not put it past Continental to expressly refer this Court to its summary judgment motion in its answering brief on the Boughton Entities' Rule 12(b)(6) motion, even though that would be wholly inappropriate.  Any such action would be misguided, as this Court has done nothing to justify any assumption that it will not scrupulously apply Rule 12(b)(6) and, in any event, the extrinsic "evidence" adduced upon Continental's motion would not cure the pleading shortfalls in the Complaint even if those facts had been pleaded.  That is because Continental has neither evidenced nor alleged facts which, if credited, would establish – much less establish clearly and convincingly – that Ronald J. Mangini ("Mangini") had knowledge that Laurence M. Brown ("Brown") was making statements in an insurance application that were false.  Thus, Continental's transparent attempt to use a premature motion to distract attention away from the Boughton Entities' dismissal motion is more Keystone Cops than it is Bernie Madoff.

In any event, Continental's transparent and clumsy procedural maneuver fails.  It fails both to provide a basis for the summary relief it prematurely seeks, and fails in its impermissible

2

attempt to collaterally influence the disposition of the Boughton Entities' motion to dismiss. Accordingly, Continental's motion for summary judgment should be denied in its entirety.

## BACKGROUND

### A.     Procedural History

Continental brought this lawsuit alleging only a single cause of action:  rescission of the Policy based upon fraud and/or misrepresentation during procurement.  Complaint at ¶¶ 38-48.  Specifically, Continental alleges that the responses to certain Application questions provided by Brown were material misrepresentations concealing the true facts from Continental. Continental's Complaint contains numerous allegations regarding Brown's knowledge when he responded to these questions, but it contains no allegations that Mangini made any statements or representations to Continental.  *See generally* Complaint.

Mangini has not filed an answer or counterclaims in this case.  Declaration of John W. Schryber, dated February 24, 2012 ("Schyber Dec.") ¶ 4.   On September 6, 2011, the Boughton Entities requested a pre-motion conference seeking permission to intervene on behalf of Mangini based upon an assignment of rights.  *Id.*  The conference was held on September 30, 2011, and, after an exchange of correspondence between counsel, on November 3, 2011, this Court ordered that the Boughton Entities be permitted to appear in this case as Intervenors.  *Id.* In addition, on November 3, 2011, this Court ordered that the Boughton Entities submit a pre-motion letter in connection with their proposed motion to dismiss by November 9, 2011.  *Id.*

On November 9, 2011, less than one week after this Court's order allowing intervention, the Boughton Entities requested a pre-motion conference on their proposed motion to dismiss Continental's rescission claim with respect to Mangini based upon Continental's failure to plead any facts with respect to any representations made by Mangini and failure to plead any facts alleging that Mangini concealed any information from Continental.  Schryber

3

Dec. ¶ 6. On December 7, 2011, Continental submitted its letter in response addressing only the Boughton Entities' proposed motion to dismiss, and not including any request by Continental for a pre-motion conference with respect to a proposed motion for summary judgment, as required by Rule 2(A) of the Court's Individual Practices. *Id.* ¶ 7.

The Court held a pre-motion conference on December 14, 2011, and granted the Boughton Entities permission to file their motion to dismiss. Schryber Dec. ¶ 8. At the end of that conference, Continental for the first time requested permission to file its summary judgment motion. *Id.* Continental made this request without advising counsel for the Boughton Entities of its intention and without submitting a pre-motion letter as required by the Court's Individual Practices. *Id.* The Court granted Continental's request to serve a motion for summary judgment simultaneously with the Boughton Entities' motion to dismiss. *Id.* When the Boughton Entities noted the need for discovery in the case, the Court recognized that the Boughton Entities could present their arguments in opposition. *Id.*

At the time of that December 14, 2011, pre-motion conference, the Boughton Entities had been part of this case for six weeks. Schryber Dec. ¶ 9. The Boughton Entities had not filed an answer, and their time to answer had been tolled in consideration of their proposed motion to dismiss. *Id.* The parties had neither exchanged Rule 26(a) disclosures nor had a Rule 26(f) conference regarding discovery procedures. *Id.* Further, the Court had not yet issued a Rule 16(b) Scheduling Order. *Id.* Needless to say, no discovery had been exchanged by the parties at all. *Id.*

**B.** **Continental's Rescission Claim Is Based Solely On The Behavior Of Brown**

Continental clearly alleges that Brown alone "prepared and signed" the Application for the Policy. Complaint at ¶ 13. Further, Continental seeks rescission based solely upon the statements made by Brown in completing the Application, and Continental does not allege that it

4

issued the Policy in reliance on any other statements or representations.  Complaint at ¶¶ 39, 46.

Continental's Rule 56.1 Statement affirms that Continental contends that only Brown "prepared,

signed and submitted" the Application to Continental.  Continental's 56.1 Statement ¶ 16.

Continental asserts no facts demonstrating that Mangini had any part in the Policy

procurement process.  Continental does not contend that Brown consulted with Mangini in

completing the Application, or that Mangini had any knowledge of the questions and the

responses being provided.  Continental does not contend that Mangini made any statements or

representations to Continental.  Continental does not contend that it relied upon any statements

or representations by Mangini.  Continental does not contend that it ever sought or solicited any

statements from Mangini, or that Mangini ever concealed any information from Continental.

### C.    The Policy Protects Innocent Insureds

The Policy insures the "Named Insured . . . [and] any person who is or becomes a

partner, officer, director, associate, or employee of the Named Insured . . . ."  Declaration of

Beverly Burrows, dated January 31, 2012 ("Burrows Dec."), Ex. B.  Continental acknowledges

that the Policy provides insurance to both Brown and Mangini.  Continental's 56.1 Statement

¶ 25.  The Policy broadly insures against liability "by reason of an act or omission in the

performance of professional services" by an insured.  Burrows Dec. Ex. B.  It is a policy

designed to protect against liability arising out of errors made in the insureds' accounting

practice, such as the errors that lead to the Boughton Entities' claim.

The Policy also contains an "Innocent insureds" provision.

L.    Innocent insureds

If coverage under this Policy would be excluded as the result of any
criminal, dishonest, illegal, fraudulent or malicious acts of any of you,
we agree that the insurance coverage that would otherwise be afforded
under this Policy will continue to apply to any of you who did not
personally commit, have knowledge of, or participate in such criminal,

DOCSNY-496579v5

> dishonest, illegal, fraudulent or malicious acts <u>or in the concealment</u>
> <u>thereof from us.</u>

Burrows Dec. Ex. B (emphasis added).  In addition, the Policy provides that it is made up of all

documentation submitted as part of the policy procurement process, and that all of these

documents together constitute the entire contract.  It further purports to establish the rights as

between the parties regarding the materiality of misstatements in the event of rescission.

> G.      Entire Contract
>
> This Policy consists of the Declarations, the Policy form, all
> endorsements attached to the Policy, the completed and signed
> application and all supplementary information and statements you
> have provided to us.
>
> * * *
>
> No concealment, misrepresentation or fraud shall avoid or defeat
> recovery under this Policy unless such concealment, misrepresentation
> or fraud was material.  Concealment, misrepresentation or fraud in the
> procurement of this Policy which if known by us would have led to
> refusal by us to make this contract or provide coverage for a claim
> hereunder will be deemed material.

Burrows Dec. Ex. B.

**D.      Continental's "Evidence"**

In support of its summary judgment motion, Continental has come forward with an

affidavit of an employee in Continental's underwriting department which allegedly supports

Continental's position that it received and relied upon the subject application in accordance with

Continental's "underwriting guidelines" – a fact which, if true, would be uniquely within

Continental's own knowledge.   Burrows Dec. ¶ 5.   That affiant has never submitted to a

deposition by the Boughton Entities (inasmuch as discovery has not yet commenced and will not

commence if the complaint is dismissed under Rule 12(b)(6)).  In any event, the affiant does not

allege that the underwriting guidelines of  Continental were followed by the affiant in renewing

the policy.  To the contrary, the only "guidelines" to which the affiant refers are those of the insurance *broker*, Aon, for *producing* policies.  *Id.*, Ex. D.  That Continental underwriter states that what she relied upon was hearsay – "comments" that AON made to Continental about the application (*in lieu* of Aon making a "recommendation" to renew).  *Id.* ¶ 5.  Those alleged hearsay "comments" of Aon are not disclosed by the affiant.  Nor does the affiant disclose the underwriting guidelines of Continental that are to be followed in determining how to treat comments by a producer, *i.e.*, whether those comments are of nature that auger in favor of renewal or against renewal.  Indeed, nothing in the affidavit rules out the possibility that Aon, which gave "comments" *in lieu of* issuing a "recommendation" to bind coverage, commented that the Application should be rejected and the Policy should not be renewed, and that Continental, hungry for premium dollars in a depressed economy, went forward with the sale anyway.  Simply put, Continental has not come forward with any evidence in support of its contention that it followed its own underwriting guidelines when it, acting upon the undisclosed comments of Aon, chose to bind coverage.

## ARGUMENT

In deciding a motion for summary judgment, the Court must determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Summary judgment is not appropriate if a dispute of any material fact is genuine.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  On "'summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'"  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Continental's motion should be denied because it is premature, it fails to demonstrate the absence of issues of fact, and it advocates a legally incorrect interpretation of the Policy language.

## I.  CONTINENTAL'S MOTION MUST BE DENIED AS PREMATURE

The Boughton Entities have a right to discovery prior to being forced to respond to a summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("This requirement [that the non-movant set forth facts showing an issue for trial] in turn is qualified by Rule 56(f)'s [now Rule 56(d)] provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").  Rather than proceed in an ordinary and just fashion, Continental seeks an advantage by contending that factual issues are undisputed when there has been no opportunity for any party (except Continental) to investigate those facts.  A party simply cannot railroad other litigants in that fashion, and summary judgment may not be granted under such circumstances.  *See Celotex Corp. v. Catrett*, 77 U.S. 317 (1986) (warning that a party should not be "'railroaded' by a premature motion for summary judgment").

The Second Circuit has made clear that "summary judgment should only be granted if '*after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'"  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)) (emphasis in original).  Even in a situation where a motion for summary judgment is made against a party that has pleaded its case, which the Boughton Entities have not, "[o]nly in the rarest of cases may summary judgment be granted against a [party who has filed a pleading but] who has not been afforded the opportunity to

conduct discovery." *Id.* at 303-304.  The Second Circuit routinely vacates or reverses a district court's grant of summary judgment when the non-movant has been denied an opportunity to obtain any discovery.  *See Seneca Beverage Corp. v. Healthnow New York, Inc.*, No. 05-4594, 2006 WL 2787454 (2d Cir. Sep. 26, 2006); *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000); *Berger v. United States*, 87 F.3d 60 (2d Cir. 1996); *Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995).  Continental does not cite, and the Boughton Entities have been unable to find, any case in this Circuit where a Plaintiff was granted summary judgment on a motion made pre-answer and pre-discovery, and, if granted, such decision was affirmed on appeal.

Federal Rule of Civil Procedure 56(d) allows a Court to deny a summary judgment outright when a litigant attempts to shield the facts from opposing counsel by bringing a summary judgment motion prior to the commencement of discovery.[1]  "There is a critical distinction . . . between cases where a litigant opposing a motion . . . [needs] *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to Plaintiff's claims and its counterclaims."  *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6-7 (N.D.N.Y. 2000) (emphasis in original).  The law abhors judgment entered against a litigant that has not had a full and fair opportunity to investigate the facts of the case.  "A party opposing a motion for summary judgment 'must have "had the opportunity to discover information that is essential to his opposition" to the motion.'"  *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995) (citations omitted).  In *Sutera*, the Second Circuit reversed the district court's grant of a pre-discovery motion for summary judgment, because it "was entered before any discovery had

---

[1] Rule 56(d) also allows the Court to defer considering the motion, stay the motion until the completion of discovery, or issue any other appropriate order.

taken place.  In these circumstances, it cannot be said that plaintiff had a full and fair opportunity" to present disputed facts in opposing the motion.  *Id.*

In *Union Bank, N.A. v. CBS Corporation*, this Court rejected the contention that a pre-discovery summary judgment motion was proper on a contract interpretation issue, finding that the defendant had "not had the opportunity to test basic alleged facts underlying this dispute and the [plaintiff's] litigation position." No. 08-cv-08362, 2009 WL 1675087, at *5 (S.D.N.Y. Jun. 10, 2009).  In *Behzadi & Brenjian Carpet v. David and Son Oriental Antique Rugs Corporation*, this Court denied a summary judgment motion filed before the initial pre-trial conference was held and before discovery had commenced as premature.  No. 07 Civ. 7073, 2009 WL 773312, at *2 (S.D.N.Y. Mar. 19, 2009); *see also Sauer v. Xerox Corp.*, 938 F. Supp. 155, 161-62 (W.D.N.Y. 1996) ("I note that this litigation is in its infancy.  No answer has been filed and no discovery has been conducted. . . .  Accordingly, both parties' motions for summary judgment on this cause of action are denied as premature.").

Here, the Boughton Entities have been afforded no opportunity at all for discovery. The Boughton Entities have not answered Continental's Complaint.  The Court has not issued a Rule 16(b) Scheduling Order, nor have the parties met pursuant to Rule 26(f).  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ." Fed. R. Civ. P. 26(d)(1).  The parties have not even exchanged information pursuant to Rule 26(a)(1).  The Boughton Entities' need for discovery is highlighted by cases like *Loo v. Prudential Ins. Co. of America*, 2004 WL 3017013 (S.D.N.Y. Dec. 30, 2004) ("*Loo*"), where an insurer's contention of material misrepresentation was refuted by evidence in the insurer's files that it was aware of the true facts at the time it issued the policy.  The Declaration of John W. Schryber submitted herewith, sets forth a number of issues into which discovery is reasonably

anticipated to raise genuine issues of material fact.  Schryber Dec. ¶ 13.  While the Boughton Entities have made requests for documents and information Continental failed to provide as part of its summary judgment motion,[2] they have had no judicially-enforceable opportunity to explore any of the facts asserted as undisputed by Continental.  This is precisely the type of unfair railroading of a litigant that the Second Circuit forbids.  The Court should deny the motion outright, and at least require Continental to wait to refile the motion later at a procedurally proper time – assuming the motion has not been mooted by the Boughton Entities' pleadings-based dismissal motion.

## II.   CONTINENTAL HAS NOT ESTABLISHED THE ABSENCE OF ANY GENUINE ISSUE OF MATERIAL FACT

Continental bears a heavy burden to come forth with admissible evidence conclusively establishing the absence of any genuine issue of material fact that the "insured" against whom rescission is sought made a false contract-inducing statement of fact that was material.  *In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) ("*WorldCom*") (quoting *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 762 N.Y.S.2d 148, 150 (3d Dep't 2003)).  Continental has failed under established New York law.

### A.   New York Law Requires That An Insurer Submit Its Own Underwriting Guidelines And Documentation Of Underwriting Similar Risks

Continental attempts to support its premature summary judgment motion with an insufficient declaration from its underwriter.  Continental submitted this declaration because the "burden of establishing the existence of a material misrepresentation is on the insurer."

---

[2] On February 9, 2012, counsel for the Boughton Entities requested that Continental produce any recommendations and/or written comments from Aon Insurance Services to Continental that concern the renewal of Continental's insurance to Marshall Granger and produce Continental's own underwriting guidelines.  Schryber Dec. ¶¶11, 12, Ex. B.  To date, Continental has not provided any information or documentation to the Boughton Entities other than the materials submitted in connection with the summary judgment motion.

DOCSNY-496579v5

*WorldCom*, 354 F.Supp.2d 455, 465 (S.D.N.Y. 2005) (citing *First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 119 (2d Cir.1999)) ("*First Financial*").   Under New York law, "a misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." *Parmar v. Hermitage Ins. Co.,* 21 A.D.3d 538, 540, 800 N.Y.S.2d 726, 728 (2d Dep't 2005) ("*Parmar*"); *Badillo v. Tower Ins. Co. of N.Y.*, 243 A.D.2d 413, 415, 663 N.Y.S.2d 207, 209 (1st Dep't 1997); *rev'd on other grounds*, 92 N.Y.2d 790 (1999).[3]   Proving materiality is a burden the insurance company must meet at trial, because "'materiality of an applicant's [alleged] misrepresentation is ordinarily a factual question . . . .'" *Ocean Walk, Ltd. v. Those Certain Underwriters at Lloyd's London*, No. 03-CV-5271, 2006 WL 2689626, at *7 (E.D.N.Y. Sep. 19, 2006) ("*Ocean Walk*") (quoting *Carpinone v. Mutual of Omaha Ins. Co.*, 265 A.D.2d 752, 754, 697 N.Y.S.2d 381, 383 (3d Dep't 1999) ("*Carpinone*")); *see also Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437, 762 N.Y.S.2d 148, 151 (3d Dep't 2003) ("*Curanovic*"); *Parmar*, 21 A.D.3d 538, 540, 800 N.Y.S.2d 726, 728; *Zilkha v. Mutual Life Ins. Co. of N.Y.,* 287 A.D.2d 713, 732 N.Y.S.2d 51 (2d Dep't 2001).   An insurer can only overcome this presumption of a factual question by providing "'clear and substantially uncontradicted evidence concerning materiality . . . .'"   *Ocean Walk*, 2006 WL 2689626, at *7 (quoting *Carpinone*, 265 A.D.2d at 754, 697 N.Y.S.2d at 383).

Only submission of an insurer's own underwriting rules and guidelines, and documentary evidence demonstrating its underwriting history with respect to similar risks and circumstances suffices to establish the absence of a genuine issue of material fact with respect to materiality, and failure to provide such evidence mandates denial of a summary judgment

---

[3] Continental has stipulated, in the Policy, that a statement is "material" only if the fact "would have led to refusal by us to make this contract or [to] provide coverage for a claim hereunder." Burrows Dec. Ex. B.

DOCSNY-496579v5

motion. *First Financial*, 193 F.3d 109 (2d Cir. 1999); *Chicago Ins. Co. v. Kreitzer & Vogelman*, 210 F. Supp. 2d 407 (S.D.N.Y. 2002) ("*Chicago II*"); *Novick v. Middlesex Mut. Assur. Co.*, 84 A.D.3d 1330, 924 N.Y.S.2d 296 (2d Dep't 2011) ("*Novick*").

> To establish materiality of misrepresentations as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application.

*Curanovic*, 307 A.D.2d at 437, 762 N.Y.S.2d at 150; *see also Barkan v. New York Schools Ins. Reciprocal*, 65 A.D.3d 1061, 1064, 886 N.Y.S.2d 414, 419 (2d Dep't 2009) ("*Barkan*"); *Lenhard v. Genesee Patrons Ins. Co-op Ins. Co.*, 31 A.D.3d 831, 818 N.Y.S.2d 644 (3d Dep't 2006) ("*Lenhard*"); *Parmar*, 21 A.D.3d 538, 800 N.Y.S.2d 726.

The statements of an underwriter, without more, are insufficient as a matter of law. "A court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation." *WorldCom,* 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (quoting *First Financial*, 193 F.3d at 119). "[T]he conclusory affidavit of an underwriter is not sufficient" *Chicago Ins. Co. v. Kreitzer & Vogelman,* No. 97 Civ. 8619, 2000 WL 16949 at *7 (S.D.N.Y. Jan. 10, 2000) ("*Chicago I*"); *see also Parmar*, 21 A.D.3d at 540-541, 800 N.Y.S.2d at 727-728; *Ocean Walk*, 2006 WL 2689626, at *8; *Feldman v. Friedman*, 241 A.D.2d 433, 434, 661 N.Y.S.2d 9, 10 (1st Dep't 1997).

An insurer's failure to provide its own underwriting guidelines requires denial of a summary judgment motion. *See Chicago II*, 210 F. Supp. 2d 407; *Chicago I*, 2000 WL 16949 at *7 (citing *Carpinone*, 265 A.D.2d at 753, 697 N.Y.S.2d at 384) (denying a summary judgment motion *sua sponte* because of lack of "documentation such as underwriting manuals, rules, or bulletins"); *Novick*, 84 A.D.3d 1330, 924 N.Y.S.2d 296; *Barkan*, 65 A.D.3d 1061, 886 N.Y.S.2d 414; *Lenhard*, 31 A.D.3d 831, 818 N.Y.S.2d 644; *Parmar*, 21 A.D.3d 538, 800 N.Y.S.2d 726.

DOCSNY-496579v5

For instance, Judge Sweet's opinion in *Chicago II* was the second of two related opinions on this issue.[4]  210 F. Supp. 2d 407.  In that opinion, Judge Sweet noted that he had previously denied the insurance company's summary judgment motion because it had failed to submit any proof of its underwriting guidelines except for an underwriter's affidavit.  *Id.* at 408.  The insurance company responded to that earlier decision by submitting another underwriter's affidavit stating that she could not recall a worse situation of failure to disclose to an insurance company, that the insurance company "would not have issued the policy" if the true facts were disclosed, and that the insurer did not maintain its own guidelines that directly addressed the situation.  *Id.* at 408-09.  Judge Sweet held that the insurer's failure to maintain underwriting guidelines did not exempt it from the well-established New York requirement for such guidelines on summary judgment motions, and denied summary judgment because the insurer "failed to present corroborating evidence in the form of underwriting manuals, rules, or bulletins and admit[ed] that no such evidence is available as there were no guidelines in effect."  *Id.* at 413.

Summary judgment will also be denied when an insurance company fails to provide documentary evidence of its underwriting of similar risks.  *See Legawiec v. North Am. Co. for Life & Health Ins. of N.Y.,* 38 A.D.3d 1184, 832 N.Y.S.2d 723 (4th Dep't 2007); *Lenhard*, 31 A.D.3d 831, 818 N.Y.S.2d 644; *Iacovangelo v. Allstate Life Ins. Co. of N.Y.,* 300 A.D.2d 1132, 750 N.Y.S.2d 920 (4th Dep't 2002).  In *WorldCom*, Judge Cote noted that "New York courts have consistently held that to meet the burden of proof on materiality, an insurer must submit evidence of its underwriting practices with respect to similar applicants."  *WorldCom*, 354 F. Supp. 2d at 465 (quoting *First Financial*, 193 F.3d at 119).

---

[4] Continental cites *Chicago Insurance Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335 (S.D.N.Y. 2003) ("*Chicago III*").  The *Chicago III* opinion was based upon findings of fact after a bench trial, not summary judgment, and issued after the Court twice denied insurance company motions for summary judgment because of a failure to submit its underwriting guidelines.

**B.**      **Continental Fails As A Matter Of Law To Demonstrate The Materiality Of Brown's Statements**

Despite preventing the Boughton Entities from obtaining discovery that could raise factual issues, Continental fails as a matter of law to meet its burden to demonstrate the absence of issues of fact.  Continental has not submitted evidence of its <u>own</u> underwriting practices as is mandatory under New York law, nor has Continental submitted any documentation regarding the underwriting of similar risks.  Instead, Continental offers only a single document entitled "Aon Underwriting Authority."  Far from presenting clear and substantially uncontradicted evidence, the Aon Underwriting Authority often contradicts the statements made in Continental's the Burrows Declaration.  At bare minimum, the Boughton Entities are entitled to discovery into the statements that are purported facts as to which Continental has exclusive access.[5]

**1.**      **The Aon Underwriting Authority Is Not A Guideline Governing Continental's Underwriting Process**

The Aon Underwriting Authority does not purport to govern Continental's underwriting decisions at all.  It states that its purpose is "[t]o provide authority for effective risk underwriting by Aon Insurance Services," not Continental.  Burrows Dec. Ex. D at 1.  The Aon Underwriting Authority makes clear that Aon does not underwrite <u>any</u> insurance policies; Aon merely assembles an underwriting file and makes recommendations.  The Aon Underwriting Authority describes three types of "referrals" that Aon makes to Continental, each of which provides that Aon will merely "review the risk" and then provide Continental with a

---

[5] Continental has not even provided the Court (or the Boughton Entities) with a complete copy of the *Aon* Underwriting Authority.  If the Aon document were relevant at all to Continental's rescission claim, the Boughton Entities would be entitled to a complete copy in order to determine how the document in its entirety might apply to Marshall Granger's Application.  By moving pre-discovery, Continental has concealed the vast majority of this document from the Boughton Entities, attaching only ten pages of the document, which is at least thirty-two pages long.  *See* Burrows Dec. Ex. D.

15

recommendation.   The "E Referral" section makes clear that, having submitted its recommendation, the "Aon Underwriter or Supervisor will be fully prepared to discuss risk factors and reasons for recommendation." *Id.* After reviewing the recommendations, it is the responsibility of the "[Continental] Underwriter [to] provide written authorization for the agreed course of action . . . ." *Id.* The "Standard Referral" section echoes this requirement, stating that "[a]fter review, [Continental] will provide a written course of action . . . ." *Id.*

It is Continental that determined whether or not to issue the Policy, and the Aon Underwriting Authority is not a guideline or manual used <u>by Continental</u> in making that determination.  Not only has Continental not submitted any guidelines or other documentation regarding Continental's underwriting process, but it has not provided the comments and recommendations submitted to it by Aon with respect to the Application or Continental's responses to those comments and recommendations.  Schryber Dec. ¶¶11, 12, Ex. B.

Submitting documentation regarding some other company's practices in assembling the underwriting file and making recommendations to Continental does not satisfy Continental's burden to submit <u>its own</u> underwriting guidelines.  Moreover, Continental cannot escape the requirement that it submit documentation of its own underwriting practices by contending that it does not maintain any written guidelines.  *See Chicago II*, 210 F. Supp. 2d at 413; *see also Olympia Mortg. Corp. v. Certain Underwriters at Lloyd's*, No. 29830/08, 2009 WL 4481653 (N.Y. Sup. Ct. Oct. 29, 2009) (insurer "failed to make a prima facie showing of entitlement to summary judgment" because it "does not maintain an 'underwriting manual'").

### 2.    The Aon Underwriting Authority Creates Issues Of Fact

Even without allowing the Boughton Entities any discovery, Continental has failed to submit uncontradicted facts regarding materiality.  The Aon Underwriting Authority often conflicts with the statements it purportedly supports in the Burrows Declaration.  For instance,

16

paragraph 15 of the Burrows Declaration states that the ownership of Infinity Reserves made it ineligible for "separate entity" coverage.   The Aon Underwriting Authority section cited by Continental for this proposition merely provides that an entity is within "Supervisor authority," a term whose definition is not included in the document supplied by Continental, based upon certain ownership criteria.   The Aon Underwriting Authority also notes certain situations where "[n]ew entities [should be] referred to [Continental] . . . ."   Nothing in this document serves as a restriction on Continental's ability to underwrite so-called "separate entity" insurance.

Similarly, paragraph 17 of the Burrows Declaration states that Continental would have charged a four percent (4%) surcharge to Marshall Granger if an affirmative response was provided to Application question 10.a.   But the Aon Underwriting Authority contains no information at all regarding any purported surcharge, other than to note that the amount of any surcharge would vary based upon a number of factors.

Paragraph 19 of the Burrows Declaration states that two exclusions would have been issued in the Policy "without exception."   But the cited portion of the Aon Underwriting Authority specifically notes that this might not be the case if Continental "knew of the venture previously."   *See Loo*, 2004 WL 3017013 (evidence produced in discovery demonstrated that insurer knew of purportedly misrepresented fact prior to issuing the policy).   In addition, there are genuine issues of fact as to why Continental has either refused to produce or is unable to produce its underwriting guidelines.

**C.      The Boughton Entities Are Entitled To Discovery Regarding The Burrows Declaration**

Continental brought its motion for summary judgment based on underwriting facts that are solely in the possession of Continental.   Summary judgment is not appropriate when the purported facts relied upon are solely within the possession of the moving party.   *See Private*

17

*Export Funding Corp. v. Government of the Dominican Republic*, No. 88-cv-5690, 1991 WL 60396, \*3 (S.D.N.Y. Apr. 8, 1991) ("*Private Export*") ("Summary judgment is inappropriate where . . . there has been no opportunity for discovery, especially if the facts needed were solely in the moving party's control"); *see also Moody Hill Farms Ltd. Partnership v. U.S. Dep't of Interior, Nat. Park Service*, No. 95-cv-11001, 1996 WL 474209, \*4 (S.D.N.Y. Aug. 20, 1996); *LoRusso v. Marco Tropical Properties, Inc.*, No. CIV-83-919E, 1986 WL 10738 (W.D.N.Y. Sep. 30, 1986); *Rolnick v. El Al Israel Airlines, Ltd.*, 551 F. Supp. 261, 264 (E.D.N.Y. 1982) ("*Rolnick*") (citing *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1968) (*en banc*) and *Subin v. Goldsmith*, 224 F.2d 753, 759-60 (2d Cir. 1955)).  "A 'denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment.'" *Private Export*, 1991 WL 60396 at \*3 (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 925 (2d Cir. 1985)).  At bare minimum, the Court should deny the motion without prejudice so that the responding part may take discovery of the facts uniquiely within the possession of the moving party.  *Rolnick*, 551 F. Supp. at 264.

The Burrows Declaration makes clear that Continental relies on alleged facts solely within Continental's knowledge.  For instance, Continental alleges that the Aon Underwriting Guidelines, "govern [Continental's] evaluation of and underwriting determinations" with respect to this case.  Burrows Dec. ¶ 15.  The language in the Aon Underwriting Guidelines directly contradicts this, and the Boughton Entities have no knowledge regarding how such guidelines are used, if at all, by any Continental personnel.

The Burrows Declaration also notes that the Application for the Policy was forwarded to Continental by Aon with accompanying comments.  Burrows Dec. ¶ 5.  Counsel for the Boughton Entities requested a copy of such comments, but Continental has refused to produce

them.   Schryber Dec. ¶ 12.   The Boughton Entities must be granted discovery regarding the unsupported statements of a "standard practice" at Continental and the application of exclusions "without exception."   *See* Burrows Dec. ¶¶ 17, 19.   The Burrows Declaration also contends that Continental "would not have renewed coverage for Marshall Granger," that Continental "has never issued coverage" to an insured involved in ongoing dishonest conduct, and that it "is inconceivable" that an insurer would underwrite insurance to an applicant who discloses involvement in a fraudulent scheme.   Burrow Dec. ¶ 22.   The Court should not grant Continental summary judgment because these contentions, even if true, involve facts solely within the knowledge and control of Continental.

### D.   Continental Has Not Proven That Brown Had Any Authority To Make Representations For Mangini

Continental has not set forth any fact tending to show that Brown had authority to bind Mangini to any statements.   New York law clearly does not allow Continental to rely on Brown's own representations to establish his apparent authority to act for Mangini.   In order to obtain summary judgment on a claim based upon apparent authority, Continental must demonstrate the absence of any genuine issue of fact that Mangini lead Continental to believe that Brown had the authority to bind him to Brown's statement.   "[T]he existence of a principal/agent relationship and the creation of apparent authority depend crucially on the words or actions *of the principal* . . . ."   *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 90 (S.D.N.Y. 2010) (quoting *Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07-cv-7017, 2009 WL 928143, at *4 (S.D.N.Y. Mar. 20, 2009)).   "Like actual authority, apparent authority 'cannot be established by the actions or representations of the agent.'"   *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 454 B.R. 285, 304 (Bkrtcy. S.D.N.Y. 2011) (quoting *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)).

19

Continental fails to make any allegations that Mangini made any statements to Continental at all, much less that Mangini lead Continental to believe that Brown could bind Mangini to Brown's statements.  Continental has neither pleaded nor put into the record any facts from which a juror could conclude that Mangini gave Brown such authority.

## III.   CONTINENTAL CANNOT RESCIND THE POLICY AS TO ALL INSUREDS BECAUSE THE POLICY PROTECTS INNOCENT INSUREDS

Continental recognizes that severability provisions protect innocent insureds from rescission actions based upon misrepresentations made by other insureds.  Continental Brief at 21.  The Boughton Entities will not reiterate the law here, and instead refer the Court to the arguments made in the Memorandum of Law in support of the Boughton Entities' motion to dismiss.  The cases on which Continental primarily relies are also discussed in that brief, and on summary judgment Continental has continued to cite authority distinguishable for the reasons set forth in the Boughton Entities' prior brief.

### A.   The Policy Provides That Continental Cannot Rescind The Entire Policy For Concealment In The Application Process

Because the "Innocent insureds provision" refers to "concealment" in the context of the insured's concealment *from the insurer* ("concealment thereof from us"), the clause necessarily refers to concealment *during the process of the insured's procurement of insurance*. It is black letter law that the only duty of disclosure that an insured owes to an insurer is in the insured's procurement of insurance.  Russ, L.R. & Segalla, T.F., *Couch On Insurance*, § 82:3 (3d ed. 2011) ("the duty to disclose . . . ceases once the application is approved and a policy issued"); *see Patrons Mut. Ins. Co. v. Rideout*, 411 A.2d 673, 678 (Me. 1980) (holding that "absent a special agreement, the insured who makes particular representations in the application for insurance is not obligated to inform the insurer of changes in circumstances occurring after issuance of the policy . . . ."); *cf. Hare & Chase, Inc. v. National Surety Co.*, 60 F.2d 909, 910

20

(2d Cir. 1932) (holding that "changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be divulged"); *Btesh v. Royal Ins. Co., Limited, of Liverpool*, 40 F.2d 659, 661 (S.D.N.Y. 1930) ("Concealment consists in the suppression by the insured of any fact or circumstance which the underwriter does not know or is not legally presumed to know and which is material to the risk, or which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk or what his premium would be if he decided to accept it.").  The Application itself affirms this principle.  The "Applicant acknowledges a continuing obligation to report to the Company as soon as practicable any material changes in all such information, after signing the application and <u>prior to issuance of the policy</u> . . . ."  Burrows Dec. Ex. A.  Once the duty to disclose terminates, the policyholder cannot "conceal" anything from the insurer.  The term "concealment" is not used in any other way in the Policy, and by including "concealment" within the "Innocent insured" provision, Continental specifically protected Mangini from acts of concealment in which he did not participate.

### B.   Continental Wrongly Contends That The Innocent Insureds Provision Applies Only To The "Exclusions" Section Of The Policy

Continental wrongly ignores New York law regarding insurance policy interpretation by contending that the phrase "would be excluded" in the Innocent insureds clause means that the clause only applies to portions of the Policy labeled "Exclusions."  New York courts do not exalt form over substance.  The exclusionary nature and effect of terms determine whether they are treated as an exclusion, no matter where those terms may appear in a policy.

New York courts look to the effect of the policy terms, and if those terms act to limit coverage, they are treated as exclusions.  *See, e.g., Stonewall Ins. Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178, 1205 (2d Cir. 1995) (treating a provision according to the

DOCSNY-496579v5

"exclusionary effect of [the] policy language, not its placement").  "Recission of an insurance contract . . . operate[s] as the functional equivalent of a contractual exclusion" with respect to the insured that suffers the rescission.  *Progressive Northern Ins. Co. v. Corder*, 15 S.W.3d 381, 384 (Ky. 2000).  For example, in *Clifford Chance Limited Liability Partnership v. Indian Harbor Insurance Company*, 41 A.D.3d 214, 838 N.Y.S.2d 62, 62 (1st Dep't 2007), the court described an allocation provision which did not appear in the "Exclusions" section of the policy as a "partial exclusion" because it made the policy inapplicable to certain persons.  As to the defense costs and settlement costs allocable to persons to whom the policy was held not to be applicable, the clause acted as an "exclusion."  *See also MBIA Inc. v. Federal Insurance Company*, 652 F.3d 152, 165 (2d Cir. 2011) (a policy provision should be deemed an "exclusion" even though the policy labeled it a "condition"); *Rhino Excavating Corp. v. Assurance Co. of America*, No. 4680/06, 2008 WL 2513334, 4 (N.Y. Sup. Ct. Jun. 11, 2008) ("Whether a particular issue may be categorized as one of 'coverage' or 'exclusion' depends upon the language of the policy and the context in which the loss occurs"); *PMI Mortg. Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, No. 07-16337, 291 Fed. Appx. 40, 41, 2008 WL 3838297, 1 (9th Cir. Aug. 14, 2008); *Mycon v. Safeco Nat. Ins. Co.*, No. 45139-1, 2000 WL 628810, 3 (Wash. Ct. App. May 15, 2000); *Upjohn Co. v. Aetna Cas. and Sur. Co.*, No. 4:88-cv-124, 1994 WL 1029337, 9 (W.D. Mich. Jul. 22, 1994) (treating policy language as an exclusion because "it essentially operates as an exclusion"); *Andover Newton Theological School, Inc. v. Continental Cas. Co.*, 964 F.2d 1237, 1243 (1st Cir. 1992).

Continental is reduced to insinuating that the "Innocent insureds" clause's reference to "exclu[sionary]" effect *cannot* connote the effect of a partial rescission which, as Continental admits, would be the effect of a "severability clause" (where innocent insureds are involved).

On this basis, Continental asserts that the "Innocent insureds" clause cannot be construed as a severability clause. This is *ipse dixit*. There is no functional difference whatsoever between the effect of "partial rescission" and the effect of an "exclusionary condition." Partial rescission does not void a policy. Rather, partial rescission simply eliminates from the Policy's scope some subset of the named insureds. Because partial rescission simply *limits* the original scope of coverage, it effects an *exclusion* of coverage – on an insured-by-insured basis. As noted, courts have characterized the effect of conditions which limit the scope of coverage, as opposed to voiding or forfeiting coverage, as "exclusionary." Thus, the "Innocent insureds" clause's reference to "exclu[sionary]" effect is perfectly consistent with partial rescission and, thus, is also perfectly consistent with a severability clause that allows for partial rescission.

In contrast, there is no support for Continental's assertion that the clause should be deemed to only refer to one or more of the provisions of the Policy that appear under the heading "Exclusions."

<u>First</u>, the clause does not refer to the section of the Policy entitled "EXCLUSIONS."

<u>Second</u>, Continental used the lowercase "e" when it drafted the clause, rather than the uppercase "E" that denotes the "EXCLUSIONS" section of the Policy.

<u>Third</u>, Continental drafted the Policy with presumptive knowledge of the rich body of case law holding that exclusionary terms of a policy are not limited to those labeled "Exclusions," and, armed with that knowledge, used terminology that the courts view as sufficiently broad as to not connote just those provisions which constitute "EXCLUSIONS", much less a specific Exclusion. If Continental had intended the words "would be excluded" to have narrow application, it could have stated that plainly.

23

Fourth, but most fundamentally, Continental wholly ignores that its interpretation of the Innocent insureds provision renders the clause "in the concealment thereof from us" meaningless.  Continental states that the Innocent insured provision exempts "those insureds who did not participate in or have knowledge of the dishonest or criminal activity."  While that much is certainly true, the provision's plain language states that it applies to more.  It protects insureds "who did not personally commit, have knowledge of, or participate" in certain wrongful acts "or in the concealment thereof from us."  **Continental makes no attempt to give meaning to this critical final clause of the Innocent insureds provision because doing so is fatal to its theory.**  No "EXCLUSION" applies to the concealment of information *from Continental*.  An insurance policy must be read to give effect to all of its provisions, and Continental's interpretation impermissibly ignores a critical protection provided by the Innocent insureds provision.  *See Farm Family Cas. Ins. v. Brady Farms, Inc.*, 87 A.D.3d 1324, 1326 (4th Dep't 2011) (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221-222 (2002)) ("We construe the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect'").  Continental's interpretation cannot be correct under New York law because Continental blithely reads "concealment thereof from us" out of the Policy.  Having offered no interpretation that would make the "concealment thereof from us" meaningful – and, thus, having offered no interpretation that would make sense of the entire clause – Continental also has conceded that the Boughton Entities' interpretation is reasonable (as it is the only interpretation before the Court that gives that entire clause meaning).[6]

---

[6] Even Continental's own lead case *Bryan Bros.* does not conclude that the Innocent insured clause "would be excluded" provision is a reference to only those provisions falling within the "EXCLUSIONS" section of the Policy.  Rather, the court merely concluded that the policyholder

DOCSNY-496579v5

Indeed, even if Continental were (improperly) to devise a second meaning in their reply brief, that would merely establish an ambiguity in the clause.  However, ambiguities must be interpreted against Continental.  *Dalton v. Harleysville Worchester Mut. Ins. Co*., 557 F.3d 88, 93 (2d Cir. 2009).

Accordingly, the "Innocent insureds" clause must be interpreted as a severability clause as a matter of law and, thus, Continental's failure to adduce facts implicating Mangini in the insurance procurement process precludes summary judgment – just as Continental's failure to allege any such facts in its Complaint mandates the dismissal of the Complaint and the mooting of Continental's summary judgment motion.[7]

## **CONCLUSION**

For the foregoing reasons, Boughton Entities respectfully request that this Court deny Continental's motion for summary judgment in its entirety.  In the alternative to denying Continental's motion on the merits, the Boughton Entities respectfully request that this Court deny Continental's motion as moot and/or deny the motion pursuant to Rule 56(d).

Dated:  February 24, 2012                              Respectfully submitted,

                                                             By:    */s John Schryber*
                                                                     John W. Schryber

---

had to satisfy a condition precedent to coverage, and that condition was not subject to the Innocent insureds provision.  Moreover, *Bryan Bros.* was decided under the law of Virgina, not the law of New York, which would hold the prior knowledge language at issue in *Bryan Bros.* to be exclusionary in nature (see authority in accompanying text).

[7] Of course, severability does not offer sanctuary to an individual adjudicated liable for fraud. The Policy contains an exclusion precluding coverage for legal adjudications of "dishonest, illegal, fraudulent, criminal or malicious acts," which give rise to the claim for which coverage is sought.

DOCSNY-496579v5

DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC   20006-5403
Telephone: (202) 420-2200
Facsimile:  (202) 420-2201

Jeremy M. King
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 277-6500
Facsimile:  (212) 277-6501

Attorneys for Joseph J. Boughton, Jr. and
Northstar Investment Group Ltd.